IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| 5EI, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )   1:12cv492 (JCC/TRJ) |
| | ) |
| TAKE ACTION MEDIA, INC., | ) |
| *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff 5EI, LLC's ("5EI") Motion to Dismiss Defendant Get Motivated Seminars, Inc.'s ("GMS") Counterclaim (the "Motion"). [Dkt. 9.] For the following reasons, the Court will deny Plaintiff's Motion to Dismiss as moot and, construing GMS's opposition as a Motion for Leave to Amend, grant GMS leave to file an amended counterclaim.

**I. Background**

This case arises out of a contractual relationship between Plaintiff 5EI and Defendants, which, allegedly unbeknownst to 5EI, was in furtherance of Defendants' scheme to misappropriate a domain name and other property.

A. Factual Background

5EI, a Virginia limited liability company headquartered in Virginia, provides, among other things, web design and web hosting services. (Compl. ¶¶ 2, 11.) Defendants in this action include Take Action Media, Inc., ("TAM") and Get Motivated Seminars, Inc. ("GMS"), both Florida corporations headquartered in Florida. (Compl. ¶¶ 3-4.) GMS and TAM organize business, motivational, and educational seminars. (Compl. ¶ 15.) Also named as Defendants are Tamara Lowe, Mitchell Steitz, Brian Forte, and Kathleen Gose, all of whom are officers or employees of TAM and/or GMS, and residents of Florida. (Compl. ¶¶ 5-8). GMS was founded by Lowe and her husband, while TAM was founded by Lowe.[1] (Compl. ¶¶ 12-13.)

On January 25, 2012, Steitz and Lowe contacted 5EI about designing, developing, and hosting a website and e-mail exchange for GMS on an emergency basis. (Compl. ¶ 16.) 5EI was told that the emergency was due to technicians who were attempting to hostilely take over GMS's website and e-mail exchange, getmotivated.com. (*Id.*) The following day, 5EI prepared a written agreement providing that 5EI would (1) create, plan, design, produce, and implement a website for $33,500, (2) host the website for $800 per month (subject to

---

[1] Another entity relevant to this action, though not named as a Defendant, is Life Win, Inc. ("Life Win"), a Florida corporation founded by Lowe and her husband. (Compl. ¶ 14.) Life Win does business as "Get Motivated" and shares a domain name with GMS, getmotivated.com. (*Id.*)

2

change based on bandwidth usage and scalability), (3) produce and host an e-mail exchange for $2,500 per month, and (4) that Defendants would pay additional costs, expenses, and fees for non-web contract services. (Compl. ¶ 21.) Steitz and Lowe decided to name the new website and e-mail exchange, yourbreakthrough.com. (Compl. ¶ 22.) They also requested that 5EI substitute TAM for GMS in the written agreement, which 5EI did. (*Id.*) Steitz then approved the terms of the contract. (Compl. ¶ 24.)

Over the next several days, 5EI received a number of "change orders," and consequently made changes to the getmotivated.com website design, which it incorporated into yourbreakthrough.com. (Compl. ¶¶ 27-28.) On January 31, 2012, 5EI verified that yourbreakthrough.com was live and that the shopping cart feature was working. (Compl. ¶ 30.) At Steitz's request, 5EI purchased an SSL certificate to redirect getmotivated.com traffic to yourbreakthrough.com. (Compl. ¶¶ 34, 36.)

Defendants represented to 5EI that the new website and e-mail exchange allowed Defendants to regain control of GMS's domain name, e-mail exchange, and, consequently, its business affairs, and that Defendants were the owners of GMS with authority to act on its behalf. (Compl. ¶¶ 41-42.) 5EI alleges that these representations were false, as was the representation

3

that technicians were attempting to hostilely take over GMS's website and e-mail exchange. (Compl. ¶¶ 43-44.)

Defendants allegedly concealed various facts from 5EI, which reflected that they did not possess 100% ownership of GMS. On January 6, 2011, Lowe filed for divorce from her husband, but claimed only a 50% marital interest in GMS and Life Win. (Compl. ¶ 46.) Lowe and Forte allegedly attempted to purchase a 50% interest in GMS and/or Life Win from Lowe's husband, but were unsuccessful in doing so. (Compl. ¶ 47.) On December 19, 2011, GMS and Life Win filed an action in Florida state court against Forte and TAM and obtained a preliminary injunction that, among other things, enjoined them from taking, destroying, hiding, altering, or otherwise compromising the integrity of GMS and Life Win's records, including but not limited to e-mails, computer files or other electronic data, and trade secrets. (Compl. ¶ 50.) On January 9, 2012, Lowe's husband allegedly sold GMS and Life Win to an entity controlled by a former Life Win employee, Joseph Johnson, who then became the companies' sole owner. (Compl. ¶ 51.)

On January 20, 2012, GMS and Life Win filed an action in the District Court for the Middle District of Florida, requesting a preliminary injunction against Lowe, Forte, and TAM. (Compl. ¶ 54.) GMS and Life Win alleged conversion of their property, including their domain name, getmotivated.com,

4

misappropriation of trade secrets, cyber piracy, tortious interference with contractual relations, false designation, and deceptive and unfair trade practices. (*Id.*) That same day, TAM allegedly filed an action against Lowe's husband and Johnson in Florida state court alleging, among other things, defamation and tortious interference. (Compl. ¶ 55.) On February 23, 2012, after 5EI had performed its contractual obligations, the parties allegedly settled these lawsuits, as well as the divorce action. (Compl. ¶ 58.) Among other things, TAM agreed to return to GMS's control its domain name and e-mail addresses, including getmotivated.com, electronic data, IT outlets, and intellectual property. (*Id.*) Lowe agreed to transfer all of TAM's assets to GMS and to dissolve TAM. (*Id.*) Lowe, in return, was paid approximately $5,000,000. (*Id.*)

Defendants' employment of 5EI was allegedly in furtherance of a scheme to unlawfully take over GMS and Life Win's domain name and website and to begin conducting business using the Get Motivated brand name. (Compl. ¶ 53.) Defendants allegedly concealed their scheme from 5EI. (*Id.*) Defendants also allegedly failed to pay 5EI despite 5EI's performance of its contractual obligations. (Compl. ¶¶ 59-60.)

In a counterclaim, GMS alleges that 5EI aided and abetted TAM in the misappropriation of GMS's website, brand name, and other property. (Counterclaim [Dkt. 7] ¶ 1.) GMS

alleges that 5EI had notice of the misappropriation by virtue of information provided by TAM, public records, and "inherently suspect representations." (Counterclaim ¶ 2.)

> B.  Procedural Background

Plaintiff filed suit in this Court on May 2, 2012, seeking damages based on theories of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conspiracy to interfere with business and contractual relations, and quasi-contract. [Dkt. 1.] On May 30, 2012, GMS answered the Complaint [Dkt. 5] and asserted a counterclaim against Plaintiff for aiding and abetting misappropriation [Dkt. 7]. Plaintiff filed a Motion to Dismiss the counterclaim on June 20, 2012. [Dkt. 9.]  GMS filed an opposition on July 2, 2012 [Dkts. 34, 35.]

Plaintiff's Motion is before the Court.

## II.  Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d

518, 522 (4th Cir. 1994).  In addition to the complaint, documents integral to and explicitly relied on in the complaint may be considered if the plaintiff does not challenge their authenticity.  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

In deciding a Rule 12(b)(6) motion, a court must be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations

7

must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Analysis

According to 5EI, GMS's counterclaim is one for negligence, and GMS's allegations fail to support such a claim. In support of this assertion, 5EI cites paragraph 3 of GMS's counterclaim.  However, paragraph 3 asserts that "[a]s a direct and proximate result of Plaintiff's negligent *and intentional acts*, Plaintiff has been damaged . . . ."  (Counterclaim [Dkt. 7] ¶ 3 (emphasis added).)  As such, it is hard to fathom how 5EI could construe GMS's counterclaim as being premised solely on a theory of negligence.

Surprisingly, GMS does not raise this issue in its opposition, nor does it clarify what claim it in fact seeks to assert.  Indeed, GMS argues not that it has sufficiently stated a claim, but rather that it is entitled to file an amended counterclaim.  Whatever claim GMS seeks to assert, its allegations are barebones and fail to satisfy the plausibility standard set forth in *Iqbal* and *Twombly*.

The Court concludes that the best course under these circumstances is to construe GMS's opposition as a Motion for Leave to Amend.  Pursuant to Federal Rule of Civil Procedure

8

15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).

Here, 5EI served its Rule 12(b)(6) motion attacking GMS's counterclaim on June 20, 2012.  Thus, GMS has until July 11, 2012 to file an amended counterclaim as a matter of course.  GMS has not submitted a proposed amended counterclaim nor has it articulated what amendments it plans to make -- omissions which would ordinarily preclude granting of leave to amend.  *See Keck v. Virginia*, No. 3:10cv555, 2011 WL 2708357, at *2 (E.D. Va. July 12, 2011).  Nevertheless, insofar as the opposition, construed as a Motion for Leave to Amend, seeks permission to file an amended counterclaim within the time period for amending as of right, leave to amend will be granted.  *See Upshaw v. Andrade*, No. 10-11517-JLT, 2011 WL 3652822, at *2 (D. Mass. Aug. 10, 2011).  Accordingly, the Court will grant GMS leave to file an amended counterclaim on or before July 11, 2012, and deny 5EI's Motion to Dismiss as moot.

## IV.   Conclusion

For these reasons, the Court will deny Plaintiff's Motion to Dismiss as moot and grant GMS's Motion for Leave to Amend.

An appropriate Order will issue.

|  |  |
|---|---|
| July 6, 2012<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |