IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

5EI, LLC,                          )
                                   )
    Plaintiff,                     )
                                   )
       v.                        )     1:12cv492 (JCC/TRJ)
                                   )
TAKE ACTION MEDIA, INC.,           )
*et al.*,                          )
                                   )
    Defendants.                    )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Tamara
Lowe and Mitchell A. Steitz's Motion to Dismiss the Complaint
and to Quash Service (the "Motions"). [Dkt. 74.] For the
following reasons, the Court will deny Defendants' Motions.

### I.  Background

This case arises out of a contractual relationship
between Plaintiff 5EI and Defendants, which, allegedly
unbeknownst to 5EI, was in furtherance of Defendants' scheme to
misappropriate a domain name and other property.

#### A. Factual Background

5EI, a Virginia limited liability company
headquartered in Virginia, provides, among other things, web
design and web hosting services. (Compl. ¶¶ 2, 11.) Defendants
in this action include Take Action Media, Inc., ("TAM") and Get

1

Motivated Seminars, Inc. ("GMS"), both Florida corporations headquartered in Florida.  (Compl. ¶¶ 3-4.)  GMS and TAM organize business, motivational, and educational seminars. (Compl. ¶ 15.)  Also named as Defendants are Tamara Lowe, Mitchell Steitz, Brian Forte, and Kathleen Gose, all of whom are officers or employees of TAM and/or GMS, and residents of Florida.  (Compl. ¶¶ 5-8).  GMS was founded by Lowe and her husband, while TAM was founded by Lowe.[1]  (Compl. ¶¶ 12-13.)

On January 25, 2012, Steitz and Lowe contacted 5EI about designing, developing, and hosting a website and e-mail exchange for GMS on an emergency basis.  (Compl. ¶ 16.)  5EI was told that the emergency was due to technicians who were attempting to hostilely take over GMS's website and e-mail exchange, getmotivated.com.  (*Id.*)  5EI agreed to work on the project on an emergency basis and accordingly canceled all of its other business appointments.  (Compl. ¶ 18.)

The following day, 5EI prepared a written agreement providing that 5EI would (1) create, plan, design, produce, and implement a website for $33,500, (2) host the website for $800 per month (subject to change based on bandwidth usage and scalability), (3) produce and host an e-mail exchange for $2,500 per month, and (4) that Defendants would pay additional costs,

---

[1] Another entity relevant to this action, though not named as a Defendant, is Life Win, Inc. ("Life Win"), a Florida corporation founded by Lowe and her husband.  (Compl. ¶ 14.)  Life Win does business as "Get Motivated" and shares a domain name with GMS, getmotivated.com.  (*Id.*)

expenses, and fees for non-web contract services. (Compl. ¶ 21.) Steitz and Lowe decided to name the new website and e-mail exchange, yourbreakthrough.com. (Compl. ¶ 22.) They also requested that 5EI substitute TAM, another company owned by Lowe, for GMS in the written agreement, which 5EI did. (*Id*.) Steitz then approved the terms of the contract. (Compl. ¶ 24.)

Over the next several days, 5EI received a number of "change orders," and consequently made changes to the getmotivated.com website design, which it incorporated into yourbreakthrough.com. (Compl. ¶¶ 27-28.) On January 31, 2012, 5EI verified that yourbreakthrough.com was live and that the shopping cart feature was working. (Compl. ¶ 30.) At Steitz's request, 5EI purchased an SSL certificate to redirect getmotivated.com traffic to yourbreakthrough.com. (Compl. ¶¶ 34, 36.)

Defendants represented to 5EI that the new website and e-mail exchange allowed Defendants to regain control of GMS's domain name, e-mail exchange, and, consequently, its business affairs, and that Defendants were the owners of GMS with authority to act on its behalf. (Compl. ¶¶ 41-42.) 5EI alleges that these representations were false, as was the representation that technicians were attempting to hostilely take over GMS's website and e-mail exchange. (Compl. ¶¶ 43-44.)

Defendants allegedly concealed various facts from 5EI, which reflected that they did not possess 100% ownership of GMS. On January 6, 2011, Lowe filed for divorce from her husband, but claimed only a 50% marital interest in GMS and Life Win. (Compl. ¶ 46.)  Lowe and Forte allegedly attempted to purchase a 50% interest in GMS and/or Life Win from Lowe's husband, but were unsuccessful in doing so.  (Compl. ¶ 47.)  On December 19, 2011, GMS and Life Win filed an action in Florida state court against Forte and TAM and obtained a preliminary injunction that, among other things, enjoined them from taking, destroying, hiding, altering, or otherwise compromising the integrity of GMS and Life Win's records, including but not limited to e-mails, computer files or other electronic data, and trade secrets. (Compl. ¶ 50.)  On January 9, 2012, Lowe's husband allegedly sold GMS and Life Win to an entity controlled by a former Life Win employee, Joseph Johnson, who then became the companies' sole owner.  (Compl. ¶ 51.)

On January 20, 2012, GMS and Life Win filed an action in the District Court for the Middle District of Florida, requesting a preliminary injunction against Lowe, Forte, and TAM.  (Compl. ¶ 54.)  GMS and Life Win alleged conversion of their property, including their domain name, getmotivated.com, misappropriation of trade secrets, cyber piracy, tortious interference with contractual relations, false designation, and

4

deceptive and unfair trade practices.  (*Id.*)  That same day, TAM allegedly filed an action against Lowe's husband and Johnson in Florida state court alleging, among other things, defamation and tortious interference.  (Compl. ¶ 55.)  On February 23, 2012, after 5EI had performed its contractual obligations, the parties allegedly settled these lawsuits, as well as the divorce action. (Compl. ¶ 58.)  Among other things, TAM agreed to return to GMS's control its domain name and e-mail addresses, including getmotivated.com, electronic data, IT outlets, and intellectual property.  (*Id.*)  Lowe agreed to transfer all of TAM's assets to GMS and to dissolve TAM.  (*Id.*)  Lowe, in return, was paid approximately $5,000,000.  (*Id.*)

Defendants' employment of 5EI was allegedly in furtherance of a scheme to unlawfully take over GMS and Life Win's domain name and website and to begin conducting business using the Get Motivated brand name.  (Compl. ¶ 53.)  Defendants allegedly concealed their scheme from 5EI.  (*Id.*)  Defendants also allegedly failed to pay 5EI despite 5EI's performance of its contractual obligations.  (Compl. ¶¶ 59-60.)

B. **Procedural Background**

Plaintiff filed suit in this Court on May 2, 2012, seeking damages based on theories of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conspiracy to interfere with business and contractual relations,

and quasi-contract.  [Dkt. 1.]  On August 1, 2012, the summons

of Defendants Lowe and Steitz were returned executed.  [Dkts.

71, 72.]  Both affidavits of service upon Lowe and Steitz

indicate that, after multiple attempts were made to serve

process to them personally or to a specified person found at

their usual place of abode, service was made by posting a copy

of process on Defendants' front door.  [Dkts. 71, 72.]

    On August 10, 2012, Defendants Lowe and Steitz

("Defendants") filed a motion to dismiss Plaintiff's complaint

for lack of personal jurisdiction and to quash service of

process (the "Motions").  [Dkt. 74.]  Plaintiff filed its

opposition brief on August 21, 2012.  [Dkt. 78.]  Defendants did

not file a reply.

    Defendants' Motions are before the Court.

## II.  Standard of Review

    Federal Rule of Civil Procedure 12(b)(2) permits

dismissal of an action when the Court lacks personal

jurisdiction over the parties.  The plaintiff bears the burden

of demonstrating personal jurisdiction by a preponderance of the

evidence once its existence is questioned by the defendant.

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a

district court decides a pretrial personal jurisdiction

dismissal motion without an evidentiary hearing, however, the

plaintiff need prove only a prima facie case of personal

jurisdiction.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*, 886 F.2d at 676.  In deciding whether the plaintiff has proved a prima facie case, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.  *Combs*, 886 F.2d at 676; *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826 (1985).

### III. Analysis

### A.    Motion to Quash Service of Process

Under Federal Rule of Civil Procedure 4(e), one of the methods by which a plaintiff may accomplish proper service upon an individual is by following the state law for service of process in the state where the district court is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  In Virginia, if a natural person cannot be served (1) by delivering a copy of process to that party in person or (2) through substituted service by delivery a copy to specified persons found at the party's usual place of abode, then that party may be served "by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode."  Va. Code Ann. § 8.01-296(2)(b).

Defendants do not contest the assertions in the affidavits of service filed with the Court.  Instead, Defendants argue that in order to effectuate service by posting, a

plaintiff also must mail a copy of the posted process to the party being served and file a certificate of such mailing with the clerk of the court.  (Def. Mem. [Dkt. 76] at 4.)   The Virginia statute specifies that a plaintiff may effectuate service by posting "provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing."  Va. Code Ann. § 8.01-296(2)(b).  By the terms of the statute, the steps of mailing a copy of process and filing a certificate of such mailing are additional requirements with which a plaintiff must comply when seeking a default judgment.  Here, Plaintiff has not requested a default or the entry of a default judgment against Defendants.  As a result, these requirements are not triggered.  Thus, Plaintiff has effectuated proper service of process on Defendants through the attested steps in the affidavits of service.  Defendants' motion to quash service of process therefore must be denied.

### B.   Motion to Dismiss for Lack of Personal Jurisdiction

In Virginia, to establish jurisdiction over a non-resident, this Court must consider first whether jurisdiction is authorized by Virginia law, and then whether the exercise of

jurisdiction comports with the due process requirements of the
Fourteenth Amendment to the United States Constitution.
*Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277
(4th Cir. 2009); Fed. R. Civ. P. 4(e)—(f).  As Virginia's
general long-arm statute extends personal jurisdiction to the
fullest extent permitted by due process, "the statutory inquiry
merges with the constitutional inquiry." *English & Smith v.
Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); Va. Code Ann. § 8.01-
328.1.  As a result, the Court need only undertake one inquiry
to determine whether the exercise of jurisdiction here comports
with the Fourteenth Amendment's due process requirements.

There are two types of personal jurisdiction that meet
the requirements of due process.  *Burger King Corp. v.
Rudzewicz*, 471 U.S. 462 (1985).  First, specific jurisdiction
exists when a defendant has sufficient "minimum contacts" with
the forum state such that "the maintenance of the suit does not
offend traditional notions of fair play and substantial
justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).
To meet this minimum contacts test, the plaintiff must show that
a defendant "'purposefully directed his activities at the
residents of the forum' and the litigation results from alleged
injuries that 'arise out of' those activities." *Burger King*,
471 U.S. at 472 (internal citations omitted).  Second, general
jurisdiction exists for claims entirely distinct from the

9

defendant's in-state activities when a defendant's activities in the state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984). Although Plaintiff asserts in its opposition brief that Defendants are subject to either specific or general jurisdiction, it advances arguments only in support of specific jurisdiction. (Pl. Opp. [Dkt. 78] at 7-9.) As a result, the Court will analyze only whether there is specific jurisdiction over Defendants.

In analyzing the due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three part test in which the Court must consider, in order, (1) "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;" (2) "whether the plaintiffs' claims arise out of those activities directed at the State;" and (3) "whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 279 (*citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

Applying this test, the Court first will analyze whether there is specific jurisdiction under the facts here. Then, the Court will consider whether such jurisdiction is

limited by Defendants' asserted defense, the fiduciary shield doctrine.

        1.  Due Process Analysis for Specific Jurisdiction

           a.  Extent Defendants Purposefully Availed Themselves of the Forum

In assessing the first prong of the test, courts in the Fourth Circuit consider a variety of nonexclusive factors in determining whether a defendant has purposefully availed himself of the forum at issue. *Consulting Eng'rs Corp.*, 561 F.3d at 278. In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Id.*

11

Considering these factors and the case at hand overall, the Court concludes that Defendants Lowe and Steitz purposefully availed themselves of Virginia in their interactions with Plaintiff.  Factors (1), (2), and (6) do not support a finding that Defendants purposefully availed themselves of the benefits and protections of Virginia's laws because there are no allegations regarding any physical presence (via offices, agents, property, or in-person contact) in Virginia by Lowe or Steinz.  Defendants' lack of physical presence in Virginia, however, "is not dispositive." *Metzger*, 901 F.2d at 39 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original).  The rest of the factors strongly support a finding of purposeful conduct by Defendants towards Virginia, thus outweighing these three factors.

First, regarding factor (3), Defendants sufficiently reached into Virginia to initiate business with Plaintiff via Defendants' electronic contacts with 5EI and its employees during the course of contracting for 5EI's website and email exchange support services.  The Fourth Circuit has adopted a modified version of the *Zippo* sliding scale for defining when electronic contacts with a state constitute sufficient purposeful conduct.  Under this standard, jurisdiction is

12

appropriate and consistent with due process when the person "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.  This standard is satisfied in a situation "where a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 713 (*quoting Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)).

That is precisely the situation in this case. Defendants contacted 5EI, a Virginia company, in order to enter into a contract for 5EI to develop, implement, and host a website and email exchange for GMS.  (Compl. ¶¶ 11, 16-21, 24.) The performance of this contract required Defendants to repeatedly transmit computer files over email to 5EI and its employees.  Defendants provided 5EI with codes, passwords, login credentials, organization and other information necessary for 5EI to carry out its services (Compl. ¶¶ 19, 25), and emailed numerous instructions and requested changes to the website and email exchange that 5EI was producing (Compl. ¶¶ 28, 34, 36-37). Moreover, Defendants' electronic activity while engaging in

13

business with 5EI (the formation of the contract, and

Defendants' representations accompanying the formation and 5EI's

performance of the contract) directly forms the basis of

Plaintiff's multiple contract and tort claims against

Defendants.  (*See* Compl. ¶¶ 73–116.)

Second, regarding factor (4), by virtue of entering

into this contract with 5EI, Defendants deliberately engaged in

a significant and long-term business activity in Virginia.  The

contract formed following Lowe and Steitz's contacts with 5EI

created a continuing obligation for 5EI to host GMS's website

and email exchange after it had developed and implemented the

site and exchange, and for GMS to pay 5EI on a monthly basis for

this ongoing service.  (Compl. ¶¶ 16–18, 21.); *Burger King*, 471

U.S. at 476.

Third, regarding factor (8), performance of the

contractual duties was to, and indeed did, occur in Virginia.

Defendants engaged the services of 5EI, a Virginia company, with

a principal place of business in Fairfax County, Virginia.

(Compl. ¶ 2).  Thus, given the location of its place of

business, the performance of 5EI's contractual duties occurred

in Virginia via 5EI's employees' work to develop, implement,

modify, and conduct training for the website and email exchange,

even though the final product (the completed and hosted website

and email exchange) was located on the web.  (Compl. ¶¶ 26-28, 30-32, 60.)

Finally, for the reasons discussed under factors (3),(4), and (8), the nature, quality, and extent of Lowe and Steitz's communications with 5EI to form and carry out a contract for web services (factor (7)) also supports finding Defendants purposefully availed themselves of Virginia.[2]  This contract, and the surrounding communications, gave rise to a substantial and unattenuated connection between Defendants and Virginia.

Based on the above analysis of these factors, the Court finds that Plaintiff has satisfied the first prong of the specific personal jurisdiction analysis.

      b.  Whether Plaintiff's Claims Arise Out of Defendants' Virginia Activities

The second prong of the Fourth Circuit's due process test requires a plaintiff's claims to arise out of the defendant's contacts with the forum state.  Based on the following allegations, the Court finds that Defendants' contacts with Virginia, through the formation and performance of the

---

[2] Regarding factor (5), whether the parties contractually agreed that Virginia law would govern disputes, Plaintiff asserts in its opposition brief that the contract contains a choice of law provision stating that Virginia law would apply.  (Pl. Opp. [Dkt. 78] at 8.)  Plaintiff, however, fails to assert this allegation in its Complaint and did not attach a copy of the contract to its Complaint.  The Court, therefore, cannot consider this assertion in analyzing this motion.  It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Elliot v. Great Point Partners, LLC*, 2011 WL 6365, at *3, n.4 (E.D. Va. Jan. 5, 2011) (Cacheris, J.).

contract and the surrounding representations, form the basis of
5EI's claims.

 5EI asserts seven causes of action against Defendants
Lowe and Steitz (*See* Compl. ¶¶ 73-116.)  These claims directly
arise out of the contract for 5EI to perform web services for
GMS, a contract that resulted from Lowe and Steitz's contacts to
5EI and that produced subsequent numerous contacts by Lowe and
Steitz during 5EI's performance of these services.  5EI asserts
that it has not been paid for any part of the services that it
performed.  (Compl. ¶ 59.)  As a result, 5EI argues that Lowe
and Steitz breached their express contract with it (Count
Three), breached their implied-in-fact contracts with it (Count
Four), and were unjustly enriched by receiving 5EI's services
without paying for them (Count Five).

 5EI also asserts that during the course of the
contract formation and performance, Lowe and Steitz repeatedly
made false representations regarding (a) the emergency need to
develop and implement a new website and email exchange in order
to regain control of GMS's domain name, e-mail exchange, and
ultimately its business affairs, due to "technicians"' alleged
attempted electronic hostile takeover of GMS's business (Compl.
¶¶ 41-43), (b) their right to, ownership of, or authority to act
on behalf of GMS (Compl. ¶¶ 41-44), and (c) their intent to pay
5EI for its web services (Compl. ¶¶ 45).  In reliance on these

16

representations, 5EI cancelled all of its other business appointments to work on the project. (Compl. ¶ 18.) 5EI devoted "virtually its entire business attention" to the project and proceeded to forego "virtually all other business opportunities" during the project. (Compl. ¶ 97.) 5EI also has not received the benefit of its bargain from the contract because it has not been paid for its services. (Compl. ¶ 59.)

Based on these false statements, omissions, and 5EI's resulting reliance and subsequent injury, 5EI brings claims against Lowe and Steitz for breach of implied covenant of good faith and fair dealing (Count Six), for fraud (Count Seven), for conspiracy to interfere with and harm business and contract relations (Count Eight), and for imposition of constructive trust (Count Nine).

As a result of the above review of the allegations on which Plaintiff's claims are based, the Court concludes that these claims directly arise out of Lowe and Steitz's alleged contacts with Virginia surrounding the formation and implementation of the contract with 5EI.

c. Whether the Exercise of Personal Jurisdiction is Constitutionally Reasonable

Finally, under the third prong of the Fourth Circuit's test, the Court may consider "additional factors to ensure the appropriateness of the forum once it has determined that a

defendant has purposefully availed itself" of the forum.
*Consulting Eng'rs Corp.*, 561 F.3d at 279.  Such factors include:
(1) "the burden on the defendant of litigating in the forum;"
(2) "the interest of the forum state in adjudicating the
dispute;" (3) the plaintiff's interest in obtaining convenient
and effective relief;" (4) "the shared interest of the states in
obtaining efficient resolution of disputes;" and (5) "the
interests of the states in furthering substantive policies."
*Id.* at 277 (*citing Burger King*, 471 U.S. at 477; *World-Wide
Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Upon
assessing each of these factors, the Court finds that the
exercise of personal jurisdiction over Lowe and Steitz would not
be constitutionally unreasonable.

    First, litigating in Virginia would not cause an
excessive burden on Defendants Lowe and Steitz.  Defendants do
not allege any such burden in their Motion to Dismiss.  In
addition, although there would be some burden on Defendants to
litigate outside of their home state of Florida, Defendants have
retained local counsel here.  Thus, any resulting burden does
not appear to preclude the fair resolution of this suit.

    Second, Virginia has a significant interest in
adjudicating this dispute regarding alleged harm to a Virginia
company.  A state has a "'manifest interest' in providing its
residents with a convenient forum for redressing injuries

18

inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (citations omitted).

Third, 5EI's interest in obtaining convenient and effective relief weighs strongly in favor of the appropriateness of the Court's jurisdiction over Defendants.  Virginia is the most convenient forum for 5EI as it is a Virginia company, its principal place of business is in Fairfax County, where its employees work, and its counsel are located in or around Northern Virginia.  (Compl. ¶ 2, 60).  Moreover, 5EI chose to bring this suit in Virginia and a plaintiff's choice of forum generally is "entitled to substantial weight." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp.2d 936, 938 (E.D.Va.2001) (citations omitted).

Finally, neither of the parties asserts any particular facts with regards to the factors of the states' shared interest in efficient resolution of disputes and in furthering substantive social policies.

As a result, the Court concludes that its exercise of specific personal jurisdiction over Defendants is constitutionally reasonable.

> 2. Applicability of Fiduciary Shield Doctrine as
>     Defense against Jurisdiction

As established in the previous section, the Court concludes that Plaintiff's allegations satisfy the due process

19

requirements to exercise specific personal jurisdiction over Defendants.  The Court now will consider whether its jurisdiction nonetheless should be limited due to Defendants' assertion that they were acting solely in their corporate capacity.

In their opposition, Defendants argue that their alleged contacts with Virginia only were in the performance of their official capacities as officers and employees of TAM and GMS.  (Def. Opp. [Dkt. 78] at 3.)  As such, they argue that they are not subject to personal jurisdiction in their individual capacity.  Such an argument invokes the theory underlying the fiduciary shield doctrine.  In support of their argument, Defendants cite *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052 (4th Cir. 1983).  Defendants, however, misread the Fourth Circuit's holding in this case and misapply the case to the facts alleged here.

In *Columbia Briargate*, the Fourth Circuit examined the fiduciary shield doctrine and the issue of when a defendant could be subject to personal jurisdiction in his individual capacity based on acts he undertook in his corporate capacity. Under the fiduciary shield doctrine, "the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity." *Id.* at 1055-

56 (*quoting Bulova Watch Co. v. K. Hattori & Co., Ltd.*, 508 F.
Supp. 1322, 1347 (E.D.N.Y.1981)).  This doctrine, however, "is
not a constitutional principle, but is rather a doctrine based
on judicial inference as to the intended scope of the long arm
statute."  *Id.* at 1056 (*quoting Marine Midland Bank, N.A. v.
Miller*, 664 F.2d 899 (2d Cir. 1981)).  As a result, the Fourth
Circuit concluded in *Columbia Briargate* that because the
fiduciary shield doctrine is "simply a rule of statutory
construction where the [state long arm] statute concededly does
not seek to go to the utmost limits of due process—it is without
application in this case where service was had under [a] long-
arm statute, which . . . extends the amenability of a non-
resident to jurisdiction 'to the outer perimeter allowed by due
process.'"  *Id.* at 1057.

     Given the inapplicability of the doctrine under such a
state long arm statute, the Fourth Circuit advanced an
alternative rule for addressing when a corporate agent was
subject to personal jurisdiction in his individual capacity,
adopting the rule applied in *Escude Cruz v. Ortho Pharmaceutical
Corp.*, 619 F.2d 902 (1st Cir. 1980).  The Fourth Circuit
concluded that "when a non-resident corporate agent is sued for
a tort committed by him in his corporate capacity in the forum
state in which service is made upon him without the forum under
the applicable state long-arm statute as authorized by Rule

21

4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process." *Columbia Briargate*, 713 F.2d at 1064.  That is, if the corporate agent "has a 'direct personal involvement' in a tort committed in the forum state, the agent is subject to jurisdiction in that state under its long-arm statute." *Id.* at 1064.  Jurisdiction is appropriate where there is "some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury," such as "where the defendant [agent] was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity."  *Id.* at 1063 (*quoting Ortho*, 619 F.2d at 902, 907).

If, however, "the claim against the corporate agent rests on *nothing more* than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state," the Fourth Circuit stated "that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state."  *Id.* at 1064-65 (emphasis added).

In their argument that *Columbia Briargate* indicates that they should not be subject to personal jurisdiction here, Defendants cite only the latter part of the above test and rely solely on their assertion that they were acting on behalf of the corporation. (Def. Opp. [Dkt. 78] at 3.)  Not only does this argument overlook much of the Fourth Circuit's actual holding, it also mistakenly relies on which capacity Defendants allegedly were acting in their interactions with 5EI regarding the contract for web services.  That is not the relevant issue.  In *Columbia Briargate*, the Fourth Circuit specifically rejected the fiduciary shield doctrine, the idea that the fact that an agent was acting in his corporate capacity while carrying out a tort was sufficient *alone* to shield him from jurisdiction, when dealing with a state long arm statute that extends personal jurisdiction to the fullest extent permitted by due process. *Id.* at 1057.  Virginia possesses such a long arm statute. *Metzger*, 901 F.2d at 38; Va. Code Ann. § 8.01-328.1.  Thus, the key question instead is whether Plaintiff's claims rely on allegations that Defendants had "direct personal involvement" in the alleged torts occurring in Virginia and that these claims are brought against Lowe and Steitz "for a tort *committed by* [*them*] . . . in the forum state" despite them operating on behalf of their company during the commission of the tort. *Id.* at 1063-64 (emphasis added).

Based on the allegations supporting specific personal jurisdiction discussed in Section III.B.1, the Court finds that 5EI's claims involve the direct, personal contacts that Lowe and Steitz made with Virginia from the formation and implementation of the contract with 5EI and the representations that Lowe and Steitz made to 5EI during that process.  5EI alleges that Lowe and Steitz personally made false representations in their communications with 5EI and its employees.  (*See* Compl. ¶¶ 16, 20, 23, 34, 41-45.)  These allegedly false representations, and the 5EI's resulting reliance and subsequent inquiry to its business, form the foundation of the several tort claims that 5EI asserts against Lowe and Steitz, including fraud.  (*See* Compl. ¶¶ 93-116).  Thus, Plaintiff's allegations, assumed to be true, show that Lowe and Steitz had "direct personal involvement" and were the "central figure[s]" in the commission of the alleged torts, and that their actions were causally related to 5EI's injury.  *Columbia Briargate*, 713 F.2d at 1063.

Moreover, 5EI alleges that these false representations were made to 5EI against the backdrop of Lowe's acrimonious divorce, connected litigation over the ownership of GMS, and Lowe and TAM's resulting attempts to circumvent several preliminary injunctions preventing them from taking, altering, or otherwise comprising the integrity of any GMS records, including emails and electronic information.  (Compl. ¶¶ 46-55.)

24

5EI alleges that Lowe and Steitz were using its services to gain control of GMS's business affairs through its website and email, effectively allowing them to take GMS hostage electronically and facilitating Lowe's subsequent settlement of the litigation for over $5,000,000 in exchange for returning control of GMS. (Compl. ¶¶ 53, 57-58, 61.)  These allegations indicate that Defendants, motivated by this alleged scheme, were the "'guiding spirit[s]' behind the wrongful conduct." *Columbia Briargate*, 713 F.2d at 1063.

The Court therefore concludes that Plaintiff's allegations satisfy the Fourth Circuit's test for imposing jurisdiction over defendant who caused a tort in the forum state while acting in his corporate capacity.  Thus, it remains appropriate for the Court to exercise specific personal jurisdiction over Defendants Lowe and Steitz.

Accordingly, the Court denies the Defendants' motion to dismiss for lack of personal jurisdiction.

### IV.  Conclusion

For these reasons, the Court will deny Defendants' Motions.

An appropriate Order will issue.


|                          | /s/                               |
| ------------------------ | --------------------------------- |
| September 17, 2012       | James C. Cacheris                 |
| Alexandria, Virginia     | UNITED STATES DISTRICT COURT JUDGE |